UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

PAUL OLSON                                      CIVIL ACTION

VERSUS                                          NO: 07-8354

E.H. WACHS, INC., ET AL.                        SECTION: R

**MEMORANDUM OPINION**

Before the Court is defendant E.H. Wachs Company's Motion for Summary Judgment (R. Doc. 27). For the following reasons, the Court GRANTS the motion in part and DENIES it in part.

I.  **BACKGROUND**

This maritime personal injury action arises out of an accident that occurred on the SAIPEM 355S while the vessel was on a salvage mission in the Gulf of Mexico. Defendant Saipem America, Inc., owner of the 355S, and defendant E.H. Wachs Company were engaged by Devon Energy Corporation to assist in disassembling and salvaging hurricane-damaged platforms and rigs in the Gulf of Mexico. Saipem apparently provided the vessel for the mission, and Wachs provided equipment that could be used to cut pipes and other cylindrical objects beneath the surface of

the water.  A separate corporation, Cal Dive International, Inc., provided divers to operate the cutting equipment underwater.

Plaintiff Paul Olson was employed by Wachs as a technician at the time of the accident.  He and two other Wachs technicians were assigned to the SAIPEM 355S to assist in the salvage operations.  Wachs's representative testified that the technicians' primary duties were to train the Cal Dive divers in the use of the cutting equipment, to "manage the maintenance of the equipment," and to "watch [the divers] through cameras and operate the equipment from the top."  Wachs Depo., R. Doc. 34-9 at 13, 15.[1]  As discussed in more detail below, the parties dispute the anticipated duration of the technicians' commitment to the SAIPEM 355S.

On November 15, 2006, after Olson had been on the 355S for about two weeks, the vessel encountered rough seas.  Olson testified that "there was stuff sliding around" in the ship's television room where he was, so he began to move toward his cabin below deck.  Olson Depo., R. Doc. 34-4 at 22.  While Olson was descending a set of stairs, a wave allegedly "hit the side of the vessel and caused him to fall," resulting in "severe and debilitating injuries."  Compl., R. Doc. 1 at ¶ 5.

Olson filed a seaman's complaint in this Court on November

---

[1] Unless otherwise noted, page numbers in this order refer to the CM/ECF document page number rather than the original document page number.

9, 2007, alleging that his injuries were caused by the defendants' negligence and by their failure to provide a seaworthy vessel. *Id.* at ¶ 6. He admits that "[t]o this point, [he] has been paid maintenance and cure," but reserves the right to "seek appropriate payment, damages, and attorney fees" from the defendants "should these benefits cease." *Id.* at ¶ 8. Wachs has filed a motion for summary judgment asking the Court to dismiss Olson's claims against it. The Court heard oral argument on January 21, 2009, and now rules as follows.

**II. LEGAL STANDARD**

Summary judgment is appropriate when there are no genuine issues as to any material facts and the moving party is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). A court must be satisfied that no reasonable trier of fact could find for the nonmoving party or, in other words, "that the evidence favoring the nonmoving party is insufficient to enable a reasonable jury to return a verdict in her favor." *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 178 (5th Cir. 1990) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). The moving party bears the burden of establishing that there are no genuine issues of material fact.

If the dispositive issue is one on which the nonmoving party

will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record contains insufficient proof concerning an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325; *see also Lavespere*, 910 F.2d at 178. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See Celotex*, 477 U.S. at 324. The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue exists for trial. *See id.* at 325; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1996).

## III. DISCUSSION

Wachs moves for summary judgment on two separate grounds. First, it argues that Olson's claims against it are barred by section 905(a) of the Longshore and Harbor Workers Compensation Act, which provides that the administrative remedies prescribed in the Act "shall be exclusive and in place of all other liability" of an employer to its LHWCA-covered employee. 33 U.S.C. § 905(a). Second, Wachs argues that, regardless of Olson's ability to maintain a legal action against his employer, he is not entitled to recover from Wachs for damages arising out of the alleged unseaworthiness of the SAIPEM 355S.

**A.   Seaman Status**

Wachs's argument that Olson's claims are barred by section 905(a) of the LHWCA turns on whether Olson is covered by the LHWCA or by the Jones Act.  The two statutes create "mutually exclusive compensation regimes."  *Chandris, Inc. v. Latis*, 515 U.S. 347, 355-56 (1995).  The Jones Act, on the one hand, "provides a cause of action in negligence for 'any seaman' injured 'in the course of his employment.'"  *Id.* (quoting 46 U.S.C. § 688).  The LHWCA, on the other hand, provides an exclusive administrative remedy for certain injured maritime employees.  Importantly, Jones Act seamen are specifically excluded from the LWHCA's coverage.  *See* 33 U.S.C. § 902(3)(G); *Chandris*, 515 U.S. at 355-56.  Any individual who qualifies as a Jones Act seaman is, by definition, not subject to the LHWCA's exclusivity provision.  The question is therefore not whether Olson is covered by the LHWCA, as Wachs would have it, but rather whether he is a seaman.  "[I]f plaintiff satisfies the criteria for being a seaman, he is covered by the Jones Act and not the LHWCA; if he does not, he is protected only by the LHWCA."  *Becker v. Tidewater, Inc.*, 335 F.3d 376, 386 (5th Cir. 2003).

The term "seaman" is not defined in the Jones Act or the LHWCA.  Courts attempting to determine an individual's status begin with the premise that not every "maritime worker on a ship at sea ... is automatically a member of the crew of the vessel

-5-

within the meaning of the statutory terms." *Chandris*, 515 U.S. at 363. To achieve status as a seaman, a party must show: (1) that the employee's duties contributed to the function of a navigable vessel or the accomplishment of its mission; and (2) that the claimant had a connection to a vessel in navigation (or to an identifiable group of vessels) that was substantial in terms of both its duration and its nature. *Id.* at 368. The purpose of this test is to "separate the sea-based maritime employees who are entitled to Jones Act protection from those land based workers who have only a transitory or sporadic connection to a vessel in navigation, and therefore whose employment does not regularly expose them to the perils of the sea." *Id.*

Whether a person is a seaman is ordinarily a question of fact for the jury. *Ellender v. Kiva Const. & Engin'g, Inc.*, 909 F.2d 803, 805 (5th Cir. 1990). Summary judgment is appropriate, however, when "the facts establish [the lack of seaman status] beyond a question as a matter of law," and no reasonable evidentiary basis exists to support a jury finding that the injured person is a seaman. *Id.* (*quoting Barrett v. Chevron USA, Inc.*, 781 F.2d 1067, 1074 (5th Cir. 1984)(other citations omitted)); *see also Roberts v. Cardinal Services, Inc.*, 266 F.3d 368, 373 (5th Cir. 2001) ("If reasonable persons, applying the proper legal standard, could differ as to whether the employee

was a 'member of a crew,' it is a question for the jury. ... Nonetheless, summary judgment or a directed verdict is mandated where the facts and the law will reasonably support only one conclusion.") (quoting *McDermott International, Inc. v. Wilander*, 498 U.S. 337, 356 (1991)).

To qualify for seaman status, Olson must first show that he contributed to the function or mission of a vessel in navigation. *Chandris*, 515 U.S. at 368. As the Fifth Circuit has recognized, "satisfying the first prong of the test is relatively easy: the claimant need only show that he 'do[es] the ship's work.'" *Baker*, 335 F.3d at 387-88. The parties do not dispute that the SAIPEM 355S was a vessel in navigation. As for the vessel's mission, it is also undisputed that it had been engaged to disassemble and salvage parts of offshore platforms and rigs that had been damaged by hurricanes. Wachs Depo., R. Doc. 34-9 at 10-11. Divers on the 355S would use Wachs-manufactured equipment to cut loose pieces of the platforms, which would then be disposed of in various ways. *Id.* at 11-12. The Wachs employees, including Olson, were responsible for training the divers in the use of the cutting equipment, maintaining the equipment, and "operat[ing] the equipment from the top" once a diver "engaged the piece of equipment on the pipe or whatever the case was." *Id.* at 13. It is clear that the mission of the vessel was to conduct offshore salvage operations and that Olson contributed to

that mission by helping to maintain and operate equipment that was necessary to the salvage operations. *Cf. Mudrick v. Cross Equipment Ltd.*, 250 Fed. Appx. 54, 55, 60 (5th Cir. 2007) (unpublished) (finding that oil spill technician, whose duties were to "conduct and/or direct the deployment, operation, and recovery of each of [the] oil spill response systems ... to effectively control, contain, and clean-up oil spills; and to safely operate all [of his employer's] spill response and support equipment, vessels, vehicles, and heavy equipment," was a seaman).

In addition to showing that he contributed to the mission of the SAIPEM 355S, Olson must also show a connection to the vessel that is substantial in both nature and duration. *Chandris*, 515 U.S. at 368. The substantiality of the connection between Olson's work and the vessel does not appear to be in question. As discussed above, Olson's job was critical to the vessel's mission. The question of whether Olson's connection with the vessel was significant in duration is more complicated. It appears that Olson's employment with Wachs was almost exclusively land-based before his assignment to the SAIPEM 355S. *See* Wachs Depo., R. Doc. 34-9 at 4 ("In fact, he worked in a power plant most of the time, a lot of the time prior to that."); Olson Depo., R. Doc. 34-4 at 15 ("Q: The only other offshore stints you had [other than on the SAIPEM 355S] was on the DISCOVERY,

correct?  A: Yes.  Q: And how long was your stint aboard the DISCOVERY?  A: I believe three weeks, might have been two."). If the Court were to "limit the seaman status inquiry ... exclusively to an examination of the overall course of [Olson's] service with [Wachs]," *Chandris*, 515 U.S. at 371-72, it would be clear that Olson would not qualify as a seaman.

The Supreme Court has held, however, that the assessment of a plaintiff's connection to a vessel in navigation is not so rigidly limited:

> When a maritime worker's basic assignment changes, his seaman status may change as well. ...  For example, we can imagine situations in which someone who had worked for years in an employer's shoreside headquarters is then reassigned to a ship in a classic seaman's job that involves a regular and continuous, rather than intermittent, commitment of the worker's labor to the function of a vessel.  Such a person should not be denied seaman status if injured shortly after the reassignment ... .  If a maritime employee receives a new work assignment in which his essential duties are changed, he is entitled to have the assessment of the substantiality of his vessel-related work made on the basis of his activities in his new position.

*Id.* at 372.  Depending upon whether Olson's "basic assignment" or "essential duties" changed when he was assigned to the SAIPEM 355S, he might still be able to qualify as a seaman.  *Id.; see also Becker*, 335 F.3d at 389 ("[F]or plaintiff to qualify for the Jones Act's protections, he must have undergone a substantial change in status, not simply serve on a boat sporadically.").

Based on the current record, the Court cannot say that the "facts and the law will reasonably support only one conclusion"

-9-

as to Olson's connection to the SAIPEM 355S. *Wilander*, 498 U.S. at 356. As noted, Olson was hired to work at a land-based oil refinery project, and he continued to work almost exclusively in land-based positions until he was assigned to the SAIPEM 355S. *See* Wachs Depo., R. Doc. 34-8 at 31 – 34-9 at 4. Olson further testified that Wachs's offshore operations "were just getting started" after he was hired. Olson Depo., R. Doc. 34-5 at 11. It would not be unreasonable for a jury to conclude from this information that Olson was originally hired as a land-based worker but was later "reassigned to a lengthy voyage on the high seas," *Chandris*, 515 U.S. at 363, as the scope of his employer's business expanded.

Indeed, Olson has presented evidence to show that his connection with the SAIPEM 355S was intended to be quite "substantial" under any reasonable understanding of the term. Although there is some dispute about the details, the record shows that Olson and Wachs anticipated that Olson's assignment might last several years. *See* Olson Depo., R. Doc. 34-5 at 22 ("Q: Do you know how long you were going to be expected to be on the S355 job had you not had your accident? A: Well, the job I understand it was supposed to be a two-year job and as far as I know [the other Wachs technicians are] still working out there."); Sheehan Depo., R. Doc. 34-6 at 8; *but see* Wachs Depo., R. Doc. 34-9 at 6-7 (stating that Wachs originally intended to

have its employees train the divers and then leave the boat, but that "[t]he more we were out there, the more likely it looked like we would stay out there"). During that time, Olson and the other Wachs technicians were scheduled to work twelve-hour shifts on the vessel for twenty-eight days at a time, with fourteen-day breaks on land in between. *See* Wachs Depo., R. Doc. 34-9 at 8-10. Aside from the breaks, the technicians spent all of their time, including nights, on the vessel. *See* Olson Depo., R. Doc. 34-5 at 13 ("[W]e all bunked in the same cabin ... ."). "[V]iew[ing] the facts in the light most favorable to [Olson] and draw[ing] all reasonable inferences in [his] favor," *Coury v. Moss*, 529 F.3d 579, 584 (5th Cir. 2008), the Court cannot say that the evidence as to the substantiality of Olson's connection with the SAIPEM 355S is "so one-sided that [Wachs] must prevail as a matter of law," *Anderson*, 477 U.S. at 251.

This conclusion is reinforced when the facts of this case are viewed in comparison to cases in which the Fifth Circuit has denied an individual seaman status as a matter of law. In *Becker v. Tidewater, Inc.*, for example, the plaintiff was a summer intern who was briefly assigned to a vessel as "an opportunity presented to him during the course of the internship." 335 F.3d at 390. The Fifth Circuit found that the plaintiff was not entitled to seaman status because his placement onboard the vessel for a 12-hour mission "was one of many activities

-11-

[scheduled] to take place during the course of the summer" and thus was not a "reassign[ment] from his job as a summer engineering intern to a regular and continuous sea-based employment position aboard the [vessel]." *Id.* Similarly, the plaintiff in *Roberts v. Cardinal Services, Inc.*, spent the great majority of his working hours on land, on stationary platforms, and on vessels that did not count toward his status as a seaman. 266 F.3d at 376. The plaintiffs in both cases had only temporary connections with vessels, and those connections occurred sporadically throughout their employment. They are precisely the individuals the Supreme Court had in mind when it warned that maritime workers should not be permitted to "oscillate back and forth between Jones Act coverage and other remedies depending on the activity in which the worker was engaged while injured." *Chandris*, 515 U.S. at 363. Olson, by contrast, appears to have gone through two distinct periods in his employment history with Wachs: first, as a land-based technician assigned to work at power plants and, second, as a sea-based technician stationed on the SAIPEM 355S. This Court cannot say, as a matter of law, that the second period of employment did not constitute "regular and continuous, rather than intermittent, commitment of [Olson's] labor to the function of a vessel." *Id.* at 372. A reasonable jury could go either way based upon the current record. Summary judgment must therefore be denied. *See Anderson*, 477 U.S. at 250

("The inquiry performed [on summary judgment] is the threshold inquiry of determining whether there is the need for a trial--whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.").

### B. Unseaworthiness

Wachs also argues that Olson's unseaworthiness claim against it should be dismissed because Wachs "had no control over the navigation or management" of the SAIPEM 355S. R. Doc. 27-2 at 9. The Court finds that the undisputed facts in the record support this conclusion. "The appropriate defendant in an unseaworthiness claim is the person who had operational control of the ship at the time the condition was created or the accident occurred." SCHOENBAUM, ADMIRALTY AND MARITIME LAW § 6-25; *see also Florida Fuels, Inc. v. Citgo Petroleum Corp.*, 6 F.3d 330, 332 (5th Cir. 1993) ("It is well-settled ... that the doctrine of 'seaworthiness' is not applicable to a dock owner who does not occupy the position of owner or operator of the vessel."); *Daniels v. Florida Power & Light Co.*, 317 F.2d 41, 43 (5th Cir. 1963) ("The idea of seaworthiness and the doctrine of implied warranty of seaworthiness arises out of the vessel, and the critical consideration in applying the doctrine is that the person sought to be held legally liable must be in the

relationship of an owner or operator of a vessel.").

The record is clear that Wachs neither owned the SAIPEM 355S, *see* Wachs Depo., R. Doc. 34-10 at 16, nor exercised operational control over it, *see* Sheehan Depo., R. Doc. 34-7 at 12-13. At any given time during the vessel's voyage, only two to three Wachs employees were on board. *See* Wachs Depo., R. Doc. 34-8 at 17. As noted, those employees' tasks were limited to training the divers, maintaining the cutting equipment, and, as the Wachs representative described it, "hit[ting] the button [on the cutting equipment control panel] when they were told to hit the button." Wachs Depo., R. Doc. 34-9 at 16. Even with respect to this last task, the dive superintendent, who was not a Wachs employee, "controlled what occurred." *Id.* It is clear that Wachs and its employees had no control over the operation and navigation of the vessel itself. As Olson has presented no evidence or arguments to rebut this showing, the Court finds that it must grant summary judgment in favor of Wachs on the issue of unseaworthiness.

**IV. CONCLUSION**

For the foregoing reasons, Wachs's Motion for Summary Judgment (R. Doc. 27) is GRANTED as to Olson's unseaworthiness claims against Wachs and DENIED in all other respects.

New Orleans, Louisiana, this 22nd day of January, 2009.

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE